**PATRICK A.H. WATTS
ATTORNEY AT LAW
878 Melrose Avenue
BRONX, NEW YORK 10451
(718) 681-0900**

December 2, 2022

**By ECF**

To: The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>United States v. Ray Boyd 20 CR 631 (AKH)</u>
    Sentencing Memorandum

Dear Judge Hellerstein:

The following memorandum is respectfully submitted on behalf of my client, Ray Boyd, in advance of his sentencing presently scheduled for December 22, 2022.

On March 17, 2022, Mr. Boyd pleaded guilty to a lesser included offense 21 U.S.C. §§846 and 841(b)(1)(C)] of Count 1 of the Superseding Indictment # S1 20 CR 631-02 (AKH). In the Presentence Investigation Report ("PSR") prepared by the United States Department of Probation in this matter, Probation concluded that based upon a total offense level of 33 and a criminal history category of III, the guideline imprisonment range is 168 to 210 months.

With this memorandum I hope to assist the Court with information and identify other factors, that I submit are relevant and should be considered in imposing a sentence below the guidelines range in this matter.

The Guidelines are just one of the Section 3553 factors a Court needs to consider in imposing sentence, and at best are "a rough approximation of sentences that might achieve 3553(a)'s objectives." <u>United States v. Rita</u>, 551 U.S. 338, 350 (2007). Based on the Supreme

1

Court's recent decisions in United States v. Booker, 125 S.Ct. 738 (2005) and Gall v. United States, 123 S.Ct. 586, 595 (2007), courts must look not only to the Sentencing Guidelines but the entirety of the Sentencing Reform Act in fashioning a sentence. The Guidelines are advisory and are to be given no greater weight than any other factor in the Sentencing Reform Act. Under Gall, moreover, courts need not find extraordinary circumstances to deviate from the guideline range. Further, non-guideline sentences are not presumptively unreasonable and the Supreme Court has sought to guard against what is described as "approaches … com[ing] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." Gall, 123 S.Ct. at 595.

The question before the Court is whether a sentence of 168 to 210 months, as probation recommends, or a sentence of probation, as I propose, will be "sufficient, but not greater than necessary" to comply with the sentencing factors of 18 U.S.C. § 3553.

As set out more fully below, the factors that I ask the Court to consider under Section 3553 support a sentence below the guidelines range:

a. As described in Section I, Mr. Boyd has demonstrated himself to be a loving and supportive family member who has had, and likely will continue to have, a positive impact on many people in his life. See 18 U.S.C. § 3553(a)(1) (directing the Court to consider the history and characteristics of the defendant in passing sentence.)

b. As described in Section II, the goals of providing deterrence and protection of the public under § 3553(a)(2)(B) and (C) are accomplished by a below the guidelines range. The proposed sentence of five years probation is an effective general deterrence. For these reasons, a sentence under the guidelines range of five years

probation is sufficient, but not greater than necessary, to satisfy the requirements of Section 3553.

**I.  Mr. Boyd's History and Characteristics Support a Sentence Below the Guidelines Range.**

Section 3553(a)(1) directs the Court to consider the history and characteristics of the offender in passing sentence. See also 18 U.S.C. § 3661("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Although Mr. Boyd stands convicted of conspiracy to distribute and possess with intent to distribute between 2.8 kilograms and 8.4 kilograms of crack cocaine, his history demonstrates that there is every indication that he will be able to contribute to his family and society positively with a sentence of probation. As documented by the letter submitted to the Court by his son, shows that Mr. Boyd is a kind and loving individual who is loved, cherished, and adored by his family.

**A. Mr. Boyd's Personal Background**

Mr. Boyd is 59 years old. He was born on December 26, 1962, in Greenville, NC. Mr. Boyd and his brother, Andre Boyd are the only children born to the marriage of Harvey Boyd and Rose Boyd.

Mr. Boyd was raised in Greenville, NC, for one year before moving with his mother and father to the Harlem area of New York City. He and his family continued to reside in Harlem for most of his life with some brief time where he lived in Brooklyn.

Mr. Boyd's father, was a cook, who passed away over 20 years ago due to complications from throat cancer. Mr. Boyd's mother, age 80, is a retired nurse.

Mr. Boyd's father was an alcoholic who drank to intoxication every weekend. His father would frequently be verbally abusive to the other members of the household. The police were called numerous times when he was a child, and they would remove his father from the house for a short period of time but never arrested him.

Mr. Boyd has one child, Mohammed Ayyubi, with Latifa Ayyubi. Mohammad age 41, resides in Orlando, Florida, and works in construction. Mr. Boyd, did not have a relationship with his son's mother. Mr. Boyd has one child Ray Boyd with Desire Bundy. Ray, age 40, resides in the Bronx, and is a warehouse worker. Mr. Boyd was in a relationship with Desire for a period. Mr. Boyd has two children, Tia Washington, and Raymond Washington with Bridgett Washington. Tia, age 35, resides in the Bronx, and is a nurse. Raymond, age 34, has been in foster care for most of his life so Mr. Boyd is unsure of his whereabouts. Bridgett was actively using drugs at the time that Raymond was born, so he was taken away and place in foster care. Mr. Boyd had visitation rights for a period until he was arrested and Family Court took away his visitation rights. He has not seen his youngest child since that time.

Mr. Boyd maintained a close relationship with all his children until he began using drugs and serving terms of imprisonment. When he was not in custody, he always made time for his children and supported them financially in any way possible. All of Mr. Boyd's children suffered from asthma during their childhood, and he frequently had to take them to a hospital during severe asthma attacks. He maintains close contact with his three oldest children.

Mr. Boyd has a close relationship with his mother who he considers his best friend. Prior to his arrest, he assisted his mother with household chores and doctor's appointments.

Mr. Boyd married Zihrah Smith, on May 4, 2012. They have no children together. Mr. Boyd's wife is currently unemployed. They maintain a close relationship and she is supportive.

Prior to Mr. Boyd's arrest, he was residing with his wife at 2070 7th Avenue, Apt #7A, New York, New York, for the past 15 years. Prior to that, he resided with his mother at 587 Riverside Drive, Apt 1F, New York, NY for around 10 to 15 years.

As a child, Mr. Boyd was diagnosed with dyslexia. He also had difficulty paying attention and controlling impulsive behaviors. Mr. Boyd now realizes that as a child he also suffered from Attention Deficit Hyperactivity Disorder (ADHD). Because of his dyslexia and ADHD, he was placed in special education classes.

Mr. Boyd excelled at basketball at West Side High School, New York, New York. And even though he could not read, his high school gave him passing grades on all his classes so that he would be eligible to play basketball. He was offered a scholarship to play basketball at Syracuse University but he declined the offer because he feared that his inability to read would be exposed. Mr. Boyd eventually dropped out of High School.

Mr. Boyd started using cocaine at the age of seventeen, at parties and on weekends. In the 1980s he started using crack cocaine. His usage quickly escalated to "all day every day" during periods when he was not incarcerated. His daily use remained active until the day of his arrest on the instant offense.

Mr. Boyd receives disability payments through SSI for the past five years due to his injuries as noted in section B.

Mr. Boyd was stabbed in the chest in the late 1980s when he tried to help a woman who was being assaulted. He was also the victim of an attempted robbery in 2012 where he was shot in the left buttocks. A bullet remains in his body.

### B. Mr. Boyd's health problems

Mr. Boyd was diagnosed with HIV in 2000 and has consistently received treatment for this condition since the diagnosis.

Mr. Boyd suffers from asthma serious enough that he requires the use of albuterol inhalers.

Mr. Boyd was diagnosed with arthritis 20 years ago. This manifests itself with lower back and hip pain. As a result, he underwent a right hip replacement at Saint Luke's Roosevelt Hospital in New York, in 2018. The surgery went well but due to his applying more of his body weight on his left side, doctors have told him that he needs a left hip replacement soon. Attached as **Exhibit A** is a copy of Mr. Boyd's medical records.

Mr. Boyd was in a motor vehicle accident in 2017 where he was a passenger in a vehicle that was struck by another vehicle. He never sought medical attention at the time, but his injuries included a broken neck. In 2019, the pain led him to receive surgery, also at Saint Luke's Roosevelt Hospital where doctors fused his spine to his vertebrae.

Mr. Boyd is presently under the care of doctors at the MDC Brooklyn. While at MDC Mr. Boyd experienced sharp kidney pains. Doctors have informed him that he may have a kidney function issue and ran some tests. The test results are pending.

Counsel asks that the Court considers that Mr. Boyd's health is substantially more impaired than most defendants. This both renders Mr. Boyd a greater burden on the federal prison system, and incarceration a greater burden on him.

### C. Letter from Mr. Boyd's son Show His Capacity To Be A Positive Influence

Mr. Boyd is a dedicated, father, son, husband, grandfather, and brother. His unwavering commitment to his family is reflected in the letter his son has written to the Court on his behalf.

Mr. Boyd's son, Mohammed Ayyubi, stated that Mr. Boyd was an outstanding grandfather to his grandchildren. Mohammed stated that his father had become a very solid individual in the family and would offer guidance and support wherever and whenever he could. Mohammed also stated that his father taught him the importance of family (**Exhibit B**).

### D. Mr. Boyd's Rehabilitative Efforts

Mr. Boyd has been incarcerated at MDC Brooklyn for the past two years and since that time he has had no disciplinary infractions.

Mr. Boyd submits a job review from when he worked in the food service kitchen at MDC during the Covid-19 pandemic. During his tenure in the kitchen, he grew into an outstanding individual who excelled in all areas of the kitchen. He was found to be very disciplined and focused on his work. He was also found to possess the ability to be efficient even under the very busy and stressful time during the Covid-19 pandemic (**Exhibit C**).

Mr. Boyd works as an orderly and received an exemplary performance review (**Exhibit D**).

Mr. Boyd's correctional counsel, Mr. Stephen Espinet has written a letter on his behalf in which he states that Mr. Boyd has been a model inmate and has had no incident report history. He also stated that Mr. Boyd has shown commitment in utilizing his incarceration for a positive outlook in life. Mr. Espinet also attached to his letter an educational transcript of several courses that Mr. Boyd has completed while at MDC (**Exhibit E**).

Mr. Boyd's Adult Education teacher, Anthony Cotroneo has submitted a letter on his behalf. Mr. Cotroneo states that he teaches eleven classes and Mr. Boyd took an active role in each class and successfully completed all of them. Mr. Cotroneo is also Mr. Boyd's GED tutor and he states that Mr. Boyd has been an active member and has received a certificate of

7

participation completing at least 80 hours of math and reading. Mr. Cotroneo also states that although Mr. Boyd struggled at first with reading, he has made significant progress with his reading and in all the other areas of concentration required to obtain his GED. Mr. Cotroneo states that at present, Mr. Boyd is well on his was to successfully obtaining his GED (**Exhibit F**).

Mr. Boyd successfully completed and received certificates for the following course hours: 4 hours of Parenting Modified Operations; 12 hours of Health Journal; 8 hours of Finance Modification; 5 hours of Weight Management; 5 hours of Enjoying the Second-L Code; 7 hours of Recreation & Leisure Control; 5 hours of Card Marking; 12 hours of 10 Soft Skills; 5 years of ESJ Eat Smart; 12 hours of 10 Ethics; 12 hours of Conflict Resolution; 12 hours of Budgets & Financial Reports; 40 hours of Pre-Trial L.A.; 40 hours of Pre-Trial Math; 12 hours of Developing Creativity; 12 hours of Entrepreneurship; 12 hours of Advanced Philosophy offered by Columbia University and 12 hours of Oedipus offered by Columbia University (**Exhibit G**, **Exhibit H** and **Exhibit I**).

## II. The Need For Deterrence and Protection of the Public Supports a Sentence of Less Than the Guidelines

Section 3553(a)(2)(B) and (C) directs the Court to consider the need for a sentence imposed to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant."

Mr. Boyd is currently 59 years-old. Under the Guidelines, age was not normally relevant to sentencing. § 5H1.1. Post-Booker, it has been noted that recidivism drops substantially with age. See, United States v. Nellum, No. 2:04-CR-30-PS, 2005 WL 300073 (N.D.Ind. Feb.3, 2005)(granting non-Guideline sentence and noting that recidivism rate for defendants between the age of 41 and 50 with a criminal history category of III is less than half that of defendants under the age of 21). In this case, given Mr. Boyd's age and medical issues, deterrence, and

protection, two bedrock goals of sentencing, are more adequately vindicated by a sentence here below the guideline range.

**III. The Sentencing Guidelines, Which Call For a Sentence Range of 168 to 210 months, As Calculated by Probation, Should be Rejected.**

Probation strictly adhering to the Federal Sentencing Guidelines, ignoring cases such as United States v. Booker, 543 U.S. 220 (2005), and Kimbrough v. United States, 552 U.S. 85 (2007), has recommended a guideline imprisonment range of 168 to 210 months. Counsel respectfully request that the Court reject Probation's recommendation and impose a non-guidelines sentence. Considering the Section 3553 factors described above in this memorandum, a sentence of 168 to 210 months for Mr. Boyd would be grave and unnecessary.

Mr. Boyd has a strong supportive network of family, as well as his positive reaction to supervision since his arrest, suggest a high probability of rehabilitation.

Mr. Boyd asks that the Court take into consideration the circumstances of his life and see him as a whole person. I therefore respectfully request that the Court impose a sentence below the sentence recommended by Probation.

**IV. THE COURT SHOULD CONSIDER THE POWDER COCAINE TO CRACK COCAINE DISPARITY IN ASSESSING SECTION 3553(a) FACTORS**

Congress introduced the EQUAL Act intending to eliminate the sentencing guideline disparities between cocaine base and powder cocaine. *See* EQUAL Act of 2021, H.R. 1693. As drafted, the EQUAL Act permits courts to "impose a reduced sentence after considering the factors set forth in section 3553(a) of title 18, United States Code" to defendants "who, on or before the date of enactment of this Act, [were] sentenced for a Federal offense" involving cocaine base. *Id.* § 2(c)(2)(A).

The Department of Justice fully endorsed the passage of the EQUAL Act before the Senate, noting that the sentencing disparity between crack and powder cocaine undermines public trust and reduces confidence in the justice system's ability to deliver fair and equitable outcomes.

The United States Attorney's Office for this district has acknowledged on numerous occasions that the crack cocaine to powder cocaine disparity is a valid factor for courts to consider in arriving at a reasonable sentence.

In Mr. Boyd's case the sentencing disparity is significant. The stipulated sentencing range of imprisonment is 168-210 months based upon a base offense level of 33 and a criminal history category of III. If the disparity was eliminated, the base offense level would be reduced eight levels to 25 (applicable to at least 2.5 kilograms but less than 3.5 kilograms of powder cocaine), and after reductions for -3 for acceptance of responsibility and +2 for possession of a firearm the total offense level would be at 25. Mr. Boyd's advisory sentencing Guidelines range in Criminal History Category III would be 70-87 months imprisonment without the powder to crack cocaine federal sentencing disparity.

### V. MR. BOYD'S SUBSTANTIAL ASSISTANCE

During Mr. Boyd's arrest, law enforcement agents discovered inside his apartment a safe that contained three guns and approximately two kilos of cocaine. Mr. Boyd never touched the safe and he did not know what was inside it. Mr. Boyd provided the Government with the identity of the individual who owned the safe. This individual paid Mr. Boyd $150.00 per week to allow him to keep the safe inside Mr. Boyd's apartment.

The Government took a sample of Mr. Boyd's DNA and compared it to DNA recovered from the safe and Mr. Boyd's DNA was not found on the safe. The Government does not assert that Mr. Boyd knew what was inside the safe.

Mr. Boyd is a crack cocaine addict and he supported his addiction by selling crack cocaine that he received from codefendant Kenneth Spearman.

Mr. Boyd has cooperated with the Government and provided them with substantial assistance at great risk to his life. The Government has not provided Mr. Boyd with a 5K letter because it would have disclosed to some of the People that the Government was investigating that Mr. Boyd was cooperating. Therefore, Mr. Boyd should be granted a downward departure based on his substantial assistance.

## VI. DOWNWARD ADJUSTMENT FOR MINIMAL ROLE

Although counsel urges the Court to impose a non-guidelines sentence, notwithstanding that position, I ask the Court, in deciding what the applicable guideline range is, to decrease Mr. Boyd's offense level by four levels for his minimal role pursuant to Sentencing Guideline section 3B.1.2.

Guidelines section 3B1.2 permits a decrease in a defendant's offense level: a defendant's offense level is reduced by two levels if he was a "minor participant in any criminal activity," four levels if a "minimal participant," and three levels if between those two categories. U.S.S.G. § 3B1.2. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," which may be evidenced by "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2, cmt. n.4. A minor participant is one "who is less culpable than most other

11

participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5.

Mr. Boyd is a crack addict who sold crack cocaine to support his addiction. He is clearly less culpable than the other individuals involved in the conspiracy. Because Mr. Boyd was a minimal participant in the offense a 4-level decrease is warranted pursuant to USSG § 3B1.2(a). *See* Application Note 4 to the Commentary to USSG § 3B1.2 (stating the 4-level reduction applies to defendants "who are plainly among the least culpable of those involved in the conduct of a group").

Further, Mr. Boyd should also be given a decrease of 4 levels because it would avoid an unwarranted sentence disparity between him and some of his codefendants.

## VII. A TWO-LEVEL SENTENCING ENHANCEMENT, UNDER U.S.S.G. § 2D1.1(b)(1), FOR MR. BOYD'S POSSESSION OF A FIREARM IS NOT APPLICABLE

During Mr. Boyd's arrest, law enforcement agents recovered a firearm from inside his apartment. Mr. Boyd found the handgun which was old and covered in rust. Probation contends that "the firearm was covered in a reddish substance." (PSR ¶ 45). Probation also contends that a two-level enhancement applies because a firearm was possessed. USSG §2D1.1(b)(1).

Section 2D1.1(b)(1) of the Sentencing Guidelines imposes a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "The applicability of [this enhancement for] possession of weapons during a narcotics offense is governed by the relevant-conduct sentencing guideline," i.e. U.S.S.G. § 1B1.3. United States v. Smith, 215 F.3d 237, 240 (2d Cir. 2000). Section 1B1.3 in turn requires that the "acts or omissions" on which the enhancement is based "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1); see United States v. Wernick, 691 F.3d

12

108, 115 (2d Cir. 2012) ("[D]uring" does not connote "purely [in the] temporal sense. To qualify as `relevant conduct,' the conduct must occur in the course of commission of the offense of conviction.").

Here, there is no evidence that Mr. Boyd possessed the firearm during the commission of the offense of conviction. Therefore, a two-level sentencing enhancement, under U.S.S.G. § 2D1.1(b)(1), should not be applied in the calculation of Mr. Boyd's offense level.

## CONCLUSION

Wherefore, it is respectfully urged that that the Court under the circumstances, fashion a sentence that would show leniency taking into consideration, Mr. Boyd's minimal role in the crime, his exemplary record of rehabilitation, his substantial assistance, his personal history and circumstances, his upbringing, history of substance abuse, and lack of education and employment history. A noncustodial sentence of time served or probation/supervised release is consistent with and is sufficient but not greater than necessary to accomplish the purposes of 18 U.S.C. § 3553.

                                        Respectfully submitted,

                                       *Patrick Watts*
                                      PATRICK A.H. WATTS, Esq.
                                      Attorney for the defendant

cc:
   Clerk of the Court (ERK) (by ECF)

   Ryan B. Finkel
   Assistant U.S. Attorney

   Alexander Nuo Li
   Assistant U.S. Attorney

   Andrew Rohrbach
   Assistant U.S. Attorney